1
2
3
4                   UNITED STATES DISTRICT COURT

5                 NORTHERN DISTRICT OF CALIFORNIA

6

7    JAMES HARALSON,                        Case No.16-cv-05226-JST

         Plaintiff,
8
                                            **ORDER GRANTING IN PART AND**
9        v.                                 **DENYING IN PART MOTION TO**
                                            **DISMISS**
10   UNITED AIRLINES, INC., et al.,
                                            Re: ECF No. 20
         Defendants.
11

12          Before the Court is Defendant United's Motion to Dismiss.  ECF No. 20.  Defendant U.S.

13   Aviation joined in that Motion.  See Haralson v. U.S. Aviation Services Corp., Case No. 16-cv-

14   05226-JST (N.D. Cal.), ECF No. 18.[1]  The Court will grant the motion in part and deny it in part.

15   **I.   BACKGROUND**

16          Plaintiff James Haralson brings several claims under California wage and hour laws on

17   behalf of himself and a putative class against Defendants United Airlines and U.S. Aviation

18   Services.  ECF No. 1-2 ¶ 1.

19          Haralson has worked as an aircraft cleaner for Defendants from June 2015 to the present.

20   Id. ¶ 5.  He alleges that during his employment he "was supervised and/or managed by United

21   employees."  Id.  ¶ 8.

22          The gravamen of Haralson's complaint is that the Defendants had a policy or practice of

23   requiring employees to be relieved—i.e., "released by a manager or supervisor"—before they

24   could take meal or rest breaks.  Id. ¶¶ 28, 31, 48, 49.  As a result of this policy, Haralson alleges

25   that employees had no control over their ability to take breaks or the timing of such breaks.  Id. ¶¶

26   29, 32, 49.  Haralson further alleges that the Defendants failed to provide timely, uninterrupted

27

28   ───────────────
     [1] U.S. Aviation filed its notice of joinder in the related case Haralson v. U.S. Aviation.

United States District Court
Northern District of California

1 meal and rest breaks as a result of this policy.  Id.  ¶¶ 20-52.

2      Based on this alleged conduct, Haralson brings the following six causes of action under

3 California law: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to

4 pay hourly and overtime wages; (4) failure to provide accurate written wage statements; (5) failure

5 to timely pay all final wages (waiting time penalty claim); and (6) unfair competition.  The last

6 four causes of action are derivative of the underlying meal and rest break claims.

7      Haralson also seeks to certify the following classes and subclasses:

8         **U.S. Aviation Class**: All persons employed by Defendant U.S.
          Aviation Services Corp. in hourly or non-exempt positions in
9         California during the Relevant Time Period.

10        **United Airlines Sub-Class**: All U.S. Aviation Class members who
          worked at or in a United Airlines facility during the Relevant Time
11        Period.

12        **Meal Break Sub-Class:** All U.S. Aviation Class and United
          Airlines Sub-Class members who worked a shift in excess of five
13        hours during the Relevant Time Period.

14        **Auto-Deduct Sub-Class**: All U.S. Aviation Class and United
          Airlines Sub-Class members who had a half hour or hour deducted
15        from their timecards regardless of whether or not they took a meal
          period.
16
          **Rest Break Sub-Class**: All U.S. Aviation Class and United Airlines
17        Sub-Class members who worked a shift of at least three and one-half
          (3.5) hours during the Relevant Time Period.
18
          **Wage Statement Penalties Sub-Class**: All U.S. Aviation Class and
19        United Airlines Sub-Class members employed by Defendants in
          California during the period beginning one year before the filing of
20        this action and ending when final judgment is entered.

21        **Waiting Time Penalties Sub-Class**: All U.S. Aviation Class and
          United Airlines Sub-Class members who separated from their
22        employment with Defendants during the period beginning three
          years before the filing of this action and ending when final judgment
23        is entered.

24        **UCL Class**: All U.S. Aviation Class and United Airlines Sub-Class
          members employed by Defendants in California during the Relevant
25        Time Period.

26 Id. ¶ 12.

27      Although Haralson initially filed this class action in the Superior Court of the State of

28 California, County of Alameda, United removed it to federal court.  See ECF No. 1.  United has

United States District Court
Northern District of California

now filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  ECF No. 20.  U.S. Aviation has joined in the motion.  See Haralson v. U.S. Aviation Services Corp., Case No. 16-cv-05226-JST (N.D. Cal.), ECF No. 18.

## II.      JURISDICTION

This Court has original jurisdiction of this action under the Class Action Fairness Act ("CAFA") because the amount in controversy exceeds $5,000,000, there is minimal diversity, and the number of class members exceeds 100.  28 U.S.C. § 1332(d)(2).

## III.     LEGAL STANDARDS

### A.      Motions to Dismiss Under Rule 12(b)(1)

"A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.2004) (citation omitted).

In resolving a facial attack, the court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir.2004) (citations omitted).

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. The court need not presume the truthfulness of the plaintiff's allegations. Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Safe Air, 373 F.3d at 1039 (citations omitted).

### B.      Motions to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a complaint need not

contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  While this standard is not a probability requirement, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (internal quotation marks omitted).  In determining whether a plaintiff has met this plausibility standard, the Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

## IV.  DISCUSSION

United moves to dismiss Haralson's complaint under Rule 12(b)(1) on the ground that this action raises representation disputes that the Railway Labor Act ("RLA") relegates to the exclusive jurisdiction of the National Mediation Board ("NMB").  ECF No. 20 at 2.  United also moves to dismiss Haralson's complaint under Rule 12(b)(6) on the ground that it fails to state a plausible claim upon which relief may be granted.  Id.

### A.  Preemption under the Railway Labor Act ("RLA")

The RLA provides a framework for efficiently resolving labor disputes between transportation carriers, including air carriers like United, and their employees.  See 45 U.S.C. §§ 151a, 181; United Air Lines, Inc. v. Int'l Ass'n of Machinist & Aerospace Workers, AFL-CIO, 243 F.3d 349, 353 (7th Cir. 2001) ("United is a 'carrier' as defined by § 201 of the Railway Labor Act.") (internal citations omitted).  To that end, the RLA addresses three kinds of labor disputes: major disputes, minor disputes, and representation disputes.  See 45 U.S.C. § 181; Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters, 779 F.3d 1069, 1081 (9th Cir. 2015) (quoting W. Airlines, Inc. v. Int'l Bhd. of Teamsters, 480 U.S. 1301, 1302 (1987)).  Because the parties disagree as to the kind of dispute at issue here, the Court begins by briefly explaining each kind of dispute.

United States District Court
Northern District of California

Major disputes relate to "the formation of collective [bargaining] agreements or efforts to secure them." Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 302 (1989) (quoting Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 723 (1945), adhered to on reh'g, 327 U.S. 661 (1946)). "They arise where there is no such agreement or where it is sought to change the terms of one." Id. In this way, major disputes "look to the acquisition of rights for the future, not the assertion of rights claimed to have vested in the past." Id. "In the event of a major dispute, the RLA requires the parties to undergo a lengthy process of bargaining and mediation," and eventually arbitration. Id.

While "major disputes seek to create contractual rights," minor disputes seek to enforce existing contractual rights as embodied in existing collective bargaining agreements. Aircraft Serv., 779 F.3d at 1081. Minor disputes thus "contemplate[] the existence of a collective bargaining agreement already concluded" and "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Burley, 325 U.S. at 723; Aircraft Serv., 779 F.3d at 1081. The Supreme Court has explained that the "distinguishing feature" of a minor dispute is that it "may be conclusively resolved by interpreting the existing [CBA]." Hawaiian Airlines, Inc., 512 U.S. at 265 (internal quotation marks and citations omitted). Minor disputes must be resolved through the RLA's non-judicial, procedural mechanisms. Id. at 253; see also 45 U.S.C. § 184 (outlining the procedures for resolving disputes "growing out of . . . the interpretation or application of agreements").

Finally, "representation disputes involve defining the bargaining unit and determining the employee representative for collective bargaining." Aircraft Serv., 779 F.3d at 1081. Representative disputes "arise[] when there is bona fide confusion about who is the employees' representative." Herrera v. Command Sec. Corp., 837 F.3d 979 (9th Cir. 2016). Because representation disputes are within the exclusive jurisdiction of the National Mediation Board ("NMB"), a district court faced with a representation dispute must therefore dismiss the case for lack of subject matter jurisdiction. Herrera, 837 F.3d at 979; United Transp. Union v. Gateway W. Ry. Co., 78 F.3d 1208, 1213 (7th Cir. 1996).

"Left outside the RLA—and so subject to resolution under state law—are quotidian

workplace disputes that do not concern the application or interpretation of a collective bargaining agreement." Aircraft Serv., 779 F.3d at 1082.  The Supreme Court has explained that "substantive protections provided by state law, independent of whatever labor agreement might govern, are not pre-empted under the RLA." Hawaiian Airlines, 512 U.S. 246, 257 (1994).  The RLA only pre-empts a state law claim if the claim is "founded directly on rights created by collective-bargaining agreements" or "substantially dependent on analysis of a [CBA]." Caterpillar Inc. v. Williams, 482 U.S. 386, 395 (1987); Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 693 (9th Cir. 2001), as amended (Aug. 27, 2001) ("A state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute.").[2]  The RLA does not pre-empt "claims or causes of action involving rights and obligations that exist independently of the CBA." Espinal v. Nw. Airlines, 90 F.3d 1452, 1456 (9th Cir. 1996).

United argues that this is a representation dispute under the RLA.  United's argument proceeds as follows.  First, it explains that when the NMB certified the International Brotherhood of Teamsters to represent United's "Mechanics and Related craft or class" (including aircraft cleaners), it did not specifically extend that union representation to employees like Haralson, who are jointly employed by United and another entity like U.S. Aviation. See ECF No. 20 at 15, 18-19.  As a result, United argues, Haralson is not represented by the International Brotherhood of Teamsters and not covered by the existing collective bargaining agreements.  ECF No. 22 at 4. Therefore, United argues, the only way that Haralson can prove his allegation that he is employed by United, and the only way this Court could apply the collective bargaining agreements to Haralson, is by resolving predicate representation issues.  ECF No. 20 at 19-20.  Those questions, United argues, include whether U.S. Aviation is a carrier subject to the RLA, whether United and

---

[2] Although the Supreme Court's decision in Caterpillar and the Ninth Circuit's decision in Cramer dealt with preemption under the Labor Management Relations Act ("LMRA"), the Supreme Court has explained that the preemption standards under the RLA and LMRA are "virtually identical." Hawaiian Airlines, 512 U.S. at 260.  And the Ninth Circuit has instructed courts deciding RLA preemption to apply the preemption test used under the LMRA.  See Espinal v. Nw. Airlines, 90 F.3d 1452, 1456 (9th Cir. 1996).

United States District Court
Northern District of California

1    U.S. Aviation are a single carrier for the purposes of the employment of these workers, and

2    whether the workers at issue in this case should be included into the existing cleaner class for

3    representation purposes.  Id.

4         United is tilting at a straw man:  Haralson and the putative class members are not using this

5    lawsuit to seek union representation or the protection of a collective bargaining agreement.  A

6    representation dispute only arises when a carrier's *employees* disagree regarding their union

7    representation.  See 45 U.S.C. § 152 (giving the NMB authority to resolve disputes that "arise

8    among a carriers *employees* as to who are the representatives of such employees") (emphasis in

9    original); Aircraft Serv., 779 F.3d at 1083 (holding that § 152 "does not apply where there is no

10   such dispute among the employees").  There is no representation dispute if the employees agree

11   that they are *not* represented by a union.  See Aircraft Serv., 779 F.3d at 1083 (holding that there

12   was no representation dispute because "the workers are not seeking to collectively bargain

13   regarding future terms and conditions of employment, and have no interest in choosing a

14   representative of their group at this time").  The RLA permits employees to seek collective union

15   representation, but it does not require them to do so.  Id.

16        Nothing in Haralson's complaint or moving papers suggests that he or any other putative

17   class member seeks union representation by the International Brotherhood of Teamsters or any

18   other entity.  To the contrary, Haralson disclaims any notion that he is covered by a collective

19   bargaining agreement.  ECF No. 21 at 11-12.  United similarly contends that "[i]t is undisputed

20   that Plaintiff and the putative class are U.S. Aviation employees who have never been determined

21   by the NMB to be part of the Mechanics and Related craft or class at United. . . . "  ECF No. 22 at

22   4.  In short, everyone agrees that Haralson and the putative class members are *not* currently

23   represented by a union.  And nothing in the record suggests any intent to seek collective

24   representation, let alone any disagreement regarding the identity of that representative.  As a

25   result, this Court does not need "to examine whether a class of employees are represented" to

26   resolve this dispute.  Allegiant Air, LLC, 788 F.3d at 1088 (9th Cir. 2015).

27        The cases relied upon by United are distinguishable because those cases required the court

28   to resolve an actual dispute between the parties regarding union representation in order to

United States District Court
Northern District of California

7

1    determine whether the workers were protected by the collective bargaining agreement that they

2    sought to enforce.

3         For example, in <u>Frontier Airlines</u>, the plaintiff union and an airline holding company

4    actually disputed whether Frontier's unionized employees would continue to be represented by the

5    same union after the holding company bought Frontier as a subsidiary.  <u>See</u> <u>Int'l Bhd. of</u>

6    <u>Teamsters Airline Div. v. Frontier Airlines, Inc.</u>, 628 F.3d 402, 403-05 (7th Cir. 2010).  Because

7    the class of workers asserted rights that were contained solely in the collective bargaining

8    agreement, and their protection under the collective bargaining agreement was dependent upon

9    their continued union representation, the court would have had to decide this predicate

10   representation dispute to resolve the suit.  <u>See</u> <u>id</u>.  Based on this "dispute over who (if anyone)

11   [was] the legitimate representative of a carrier's workers," the court concluded that the NMB had

12   exclusive jurisdiction.  <u>Id</u>.

13        Similarly, in <u>United Transp. Union v. Gateway W. Ry. Co.</u>, 78 F.3d 1208, 1210-16 (7th

14   Cir. 1996), the plaintiff union sought to represent workers who were hired as part of the defendant

15   railroad's new operations after it formed a wholly-owned subsidiary, whereas the railroad

16   contended that the employees of its new subsidiary were no longer represented by the union or

17   protected by the previous collective bargaining agreement.  <u>See</u> <u>id</u>.  Again, the parties actually

18   disagreed regarding union representation, and that disagreement was material to the resolution of

19   the plaintiff's claims, which were rooted in a provision of the pre-existing collective bargaining

20   agreement.  <u>See</u> <u>id</u>.  Without union representation, the workers were not protected by that

21   collective bargaining agreement and therefore unable to succeed on their claims.  The court

22   therefore determined that this dispute regarding "[w]hether or not the . . . collective bargaining

23   agreement would also apply to [the railroad's] new operations in light of the relationship between

24   those carriers raises a dispute over representation that is within the NMB's exclusive jurisdiction."

25   <u>Id</u>. at 1215-16.

26        In contrast to <u>Frontier Airlines</u> and <u>Gateway W. Ry. Co.</u>, the Plaintiff in this case does not

27   claim to be represented by the union that the NMB certified to represent aircraft cleaners at United

28   before the merger and United's outsourcing of that job to U.S. Aviation.  And United agrees that

1  the Plaintiff is not represented by the union or covered by the pre-existing collective bargaining

2  agreements.  Therefore, unlike in Frontier Airlines and Gateway W. Ry. Co., there is no predicate

3  representation dispute that this Court must decide to resolve the Plaintiff's state law claims.

4      This case does not raise a major or minor dispute under the RLA, either.[3]  Haralson and the

5  putative class members do not seek to form a new collective bargaining agreement or change the

6  terms of an existing collective bargaining agreement.  Cf. Consol. Rail Corp., 491 U.S. at 302.

7  Nor do they seek to enforce contractual rights grounded in an existing collective bargaining

8  agreement.  See Aircraft Serv., 779 F.3d at 1081; Pearson v. Nw. Airlines, Inc., 659 F. Supp. 2d

9  1084, 1089–90 (C.D. Cal. 2009) ("'[M]inor disputes' are those that are 'grounded' in the

10  collective bargaining agreement.") (quoting Felt v. Atchison, Topeka & Santa Fe Ry. Co., 60 F.3d

11  1416 (9th Cir. 1995)).

12      In fact, Haralson and the putative class members base their claims solely on the protections

13  afforded to them by California state law, without any reference to a collective bargaining

14  agreement, let alone any need to interpret a collective bargaining agreement.  Cramer, 255 F.3d at

15  693; Valles v. Ivy Hill Corp., 410 F.3d 1071, 1082 (9th Cir. 2005) (holding that the plaintiff's

16  state law claim for meal periods was not preempted by the LMRA because "the construction of the

17  collective bargaining agreement [was] simply not involved").  United does not point to any terms

18  in the collective bargaining agreements that this Court would need to construe because it agrees

19  that the Plaintiff is not covered by a collective bargaining agreement.  ECF No. 22 at 4. Although

20  United makes much of the Plaintiff's allegation that United is a joint employer because it

21  "supervised and/or managed" the Plaintiff, the Court can determine whether United is such an

22  employer simply by looking to California law.  See Martinez v. Combs, 49 Cal. 4th 35, 75–77,

23

24  _____
   [3] United completely fails to address these issues in its briefing, arguing that the minor-dispute
25  principles raised by the Plaintiff "are *irrelevant to United's representation-dispute arguments*
   here." ECF No. 22 at 4 (emphasis in original).  United further argues that it does not need to
26  address these issues until the representation dispute is resolved, claiming that it reserves any
   arguments in this regard.  Id. n. 3.  However, the Plaintiff addressed both representation and
27  minor-dispute issues in his opposition, and United cites no authority for its argument that it can
   simply ignore the latter aspect of the RLA preemption analysis now only to resurrect any pertinent
28  arguments later.  See ECF No. 21 at 11-17.  To the contrary, as United itself points out, the Court
   may treat those arguments as conceded.  ECF No. 22 at 3.

United States District Court
Northern District of California

1   231 P.3d 259, 286–87 (2010), as modified (June 9, 2010) (recognizing that a "joint employer[]"

2   may be held liable under California wage and hour laws where it exercises control over the

3   working conditions of the employees by supervising the work).  Courts have routinely held that

4   California wage and hour claims are not preempted in similar circumstances.  See, e.g., Livadas v.

5   Bradshaw, 512 U.S. 107, 124–25 (1994) (holding that there was no LMRA preemption because

6   the plaintiff's wage and hour claim raised "a question of state law, entirely independent of any

7   understanding embodied in the collective-bargaining agreement between the union and the

8   employer"); Angeles v. U.S. Airways, Inc., No. C 12-05860 CRB, 2013 WL 622032, at *5-7

9   (N.D. Cal. Feb. 19, 2013) ("Defendant allegedly violated a state law obligation to provide proper

10   overtime compensation independent of its obligation under the CBA, and therefore [RLA]

11   preemption is not appropriate. . . . [r]esolving Plaintiffs' overtime claim only requires the Court to

12   determine how many hours Plaintiffs worked and what Plaintiffs' wages were in relation to those

13   set forth by state law.").

14         Even assuming that some collective bargaining agreement might potentially apply to

15   Haralson or the putative class members, such an agreement would still be irrelevant because non-

16   negotiable state law rights like those at issue here cannot be waived through such agreements.  See

17   Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1111 (9th Cir. 2000) ("This

18   legislature could not have spoken more clearly, and we agree with the Supreme Court that § 219

19   purports to "preclude[ ] any private contractual waiver of the[ ] minimum labor standards" set

20   forth in the Code."); Valles v. Ivy Hill Corp., 410 F.3d 1071, 1082 (9th Cir. 2005) (explaining that

21   "any provision of the collective bargaining agreement purporting to waive the right to meal

22   periods would be of no force or effect" because "[t]he right in question is plainly nonnegotiable")

23   (citing Cal. Lab. Code § 219; Balcorta, 208 F.3d at 1111).

24         In sum, this Court only needs to interpret California law, not a collective bargaining

25   agreement, to resolve this dispute.  See Gregory v. SCIE, LLC, 317 F.3d 1050, 1053 (9th Cir.

26   2003) ("The dispute between the parties may require interpretation of the words "any work" in the

27   statute, but its resolution does not require reference to, much less interpretation of, the CBA.").

28   As a result, the Plaintiff's claims are not preempted by the RLA.

United States District Court
Northern District of California

10

1

**B.     Failure to State a Claim**

2      United argues that, even if this Court has subject matter jurisdiction over the action, it

3   should dismiss Haralson's complaint because it fails to plausibly state a claim upon which relief

4   could be granted.  ECF No. 20 at 20-31.  United makes several arguments in this regard.  The

5   Court addresses each in turn.

6

**1.     United's Employer Status**

7      To be liable for the California wage and hour violations alleged here, United must have

8   employed Haralson and the putative class.  See Martinez v. Combs, 49 Cal. 4th 35, 49 (2010), as

9   modified (June 9, 2010); Ochoa v. McDonald's Corp., 133 F. Supp. 3d 1228, 1232 (N.D. Cal.

10   2015).  The parties agree that the California Supreme Court's decision in Martinez v. Combs

11   outlines the test for joint employment when evaluating California wage and hour claims like these.

12   See ECF No. 20 at 20-22; ECF No. 21 at 23-25.  In that case, the court held that the Industrial

13   Welfare Commission's wage orders define who counts as an "employer" subject to liability under

14   California's minimum wage requirement.[4]  Martinez, 49 Cal. 4th at 52.  The wage orders, in turn,

15   define an "employer" as one who "exercise[s] control over the wages, hours or working

16   conditions," or "suffer[s] or permit[s] to work," or "engage[s], thereby creating a common law

17   employment relationship."  Id. at 64 (citing Wage Order No. 14, Cal. Code Regs., tit. 8, § 11140).[5]

18   "While [the] plaintiff is not required to conclusively establish that defendants were her joint

19   employers at the pleading stage, [the] plaintiff must at least allege *some* facts in support of this

20   legal conclusion."  Johnson v. Serenity Transp., Inc., 141 F. Supp. 3d 974, 988 (N.D. Cal. 2015)

21   (internal quotation marks omitted) (quoting Hibbs–Rines v. Seagate Techs., LLC, No. C 08–05430

22   SI, 2009 WL 513496, at *5 (N.D.Cal. Mar. 2, 2009)).

23      United argues that the Court should dismiss the claims against United because Haralson

24

25   [4] "Although *Martinez* involved alleged minimum wage violations under California Labor Code §
1194, California courts have applied the *Martinez* definition of employment to causes of action
26   arising under other sections of the Labor Code as well."  Ochoa, 133 F. Supp. 3d at 1241, n. 3
(summarizing cases).
27   [5] Wage Order No. 9, which governs those who work in the transportation industry, defines
"employer" in the same way.  See Torres v. Air to Ground Servs., Inc., 300 F.R.D. 386, 394–95
28   (C.D. Cal. 2014).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    fails to plausibly allege that United was his employer.  ECF No. 20 at 20-22.  In response,

2    Haralson relies on the first part of the "employer" definition.  He argues that his complaint

3    plausibly alleges that United exercised control over Plaintiff's working conditions such that

4    United may be considered a joint employer under California law.  ECF No. 21 at 23-25.

5         It is true that control over "any one of the three aspects—wages, hours, or working

6    conditions—is sufficient to impute employer liability under California wage and hour law."

7    Torres v. Air to Ground Servs., Inc., 300 F.R.D. 386, 395 (C.D. Cal. 2014) (explaining that an

8    entity that controls one aspect of the employment relationship, such as "supervis[ing] the work,"

9    may be held liable as an employer).  In fact, the California Supreme Court explained in Martinez

10   that "one of the reasons the IWC defined 'employer' in terms of exercising control was to reach

11   situations in which multiple entities control different aspects of the employment relationship."

12   Martinez, 49 Cal. 4th at 76.  The court went on to explain that such fragmented control "occurs,

13   for example, when one entity (such as a temporary employment agency) hires and pays a worker,

14   and another entity *supervises the work*."  Id. (emphasis added).  The court concluded that this

15   "[s]upervision of the work, in the specific sense of exercising control over how services are

16   performed, is properly viewed as one of the 'working conditions' mentioned in the wage order."

17   Id.  Finally, the court noted that "[t]o read the wage order in this way makes it consistent with

18   other areas of the law, in which control over how services are performed is an important, perhaps

19   even the principal, test for the existence of an employment relationship."  Id.  Therefore, to the

20   extent United suggests that something more than supervision is required, such as "hiring and firing

21   power," the Court rejects that interpretation based on the California Supreme Court's clear

22   statement on the matter. ECF No. 20 at 21.[6]

23        Even when the pleading burden is properly understood, however, Haralson fails to meet it.

24   He asks this Court to infer United's control over his working conditions by reference to a single

25   

26   ─────────────────
     [6] United also suggests that it cannot be considered an employer unless it had "the power to control
     wages."  ECF No. 20 at 21, n. 2.  But it misreads Futrell v. PayDay California, Inc. to support that
27   argument.  See 190 Cal. App. 4th 1419, 1431-33 (2010).  The only reason the Futrell court
     required the plaintiff to show that the defendant had "exercised control over his wages" is because
28   there was no evidence in the record that the defendant had controlled the plaintiff's hours or
     working conditions.  See id.

                                              12

1    conclusory allegation in the complaint that "Plaintiff was supervised and/or managed by United

2    employees." ECF No. 1-2 ¶ 8.  This allegation simply does not include sufficient factual content

3    for this Court to reasonably infer that United supervised Haralson and thus exercised control over

4    some aspect of the Plaintiff's working conditions.  The Court therefore grants United's motion to

5    dismiss in this respect.

6                    **2.     Meal and Rest Break Claims**

7           Under Section 512(a) of the California Labor Code, an employer must provide an

8    employee with a thirty-minute meal period for every five hours of work.  See Cal. Lab. Code §

9    512(a).  To satisfy its obligation to provide meal periods, an employer must "relieve[] its

10   employees of all duty, relinquish[] control over their activities and permit[] them a reasonable

11   opportunity to take an uninterrupted 30-minute break," without  "imped[ing] or discourag[ing]

12   them from doing so."  See Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1040–41

13   (2012).  Once the employer has relieved the employee, it is not required to police meal breaks to

14   ensure that the employee is not performing work.  See id. ("Bona fide relief from duty and the

15   relinquishing of control satisfies the employer's obligations.").  "[S]ection 512 requires a first

16   meal period no later than the end of an employee's fifth hour of work, and a second meal period

17   no later than the end of an employee's 10th hour of work."  Id.

18          In addition, an employer in the transportation industry must permit all employees to take

19   ten minutes of rest time for every four hours of work.  Wage Order No. 9, Cal. Code Regs. Tit. 8,

20   § 11090, ¶ 12.  However, the employer is not required to provide a rest period for an employee

21   who works less than three and one-half hours a day.  Id.  If an employer fails to provide a rest

22   period, the employer must pay the employee one hour of pay for each workday that the rest period

23   was not provided.  Id.

24          Haralson alleges that the Defendants maintained a policy or practice of requiring Plaintiff

25   and putative class members "to be relieved"—i.e. "released by a manager or supervisor"—before

26   they could take their meal and rest periods.  ECF No. 1-2 ¶¶ 28-30, 48-49.  As a result of this

27   policy, Haralson alleges, he and other putative class members "had no control over their ability" to

28   take those breaks or the timing of those breaks.  Id.  Haralson alleges that this policy resulted in

United States District Court
Northern District of California

13

the Defendants' failure to provide uninterrupted meal periods, failure to provide rest periods, and the provision of "late meal periods" (i.e., "failed to provide . . . [the] first meal period before the fifth hour of the shift and the second meal period before the tenth hour of the shift").  Id. ¶¶ 33, 34, 48.  Haralson further alleges that the Defendants failed to provide a second meal period during shifts of ten hours or more.  Id. ¶¶ 36-40.

          United first argues that Haralson's complaint is deficient because it fails to allege that he worked any shift that was long enough to trigger meal and rest break obligations.  ECF No. 20 at 23.  The Court agrees.  Haralson alleges that Defendants had a policy or practice of not providing a first meal break for "each five (5) hour work period," not providing a second meal break "for shifts of ten (1) or more hours," and not providing rest periods "for each four (4) hour work period."  Although these general allegations suggest that the Defendants may be liable for the misconduct alleged in the abstract, they do not suggest that *Haralson* is plausibly entitled to relief for the allegedly illegal conduct.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Nowhere in the complaint does Haralson provide any factual information to suggest that he personally worked any shift that was long enough to trigger meal and rest break obligations.  Cf. Ambriz v. Coca Cola Co., No. 13-CV-03539-JST, 2013 WL 5947010, at *3 (N.D. Cal. Nov. 5, 2013) (finding that the plaintiff had alleged that he worked sufficient hours to be entitled to meal breaks because the complaint referred to days in which the plaintiff had worked five hours or more).  Of course, Haralson is not required to plead his schedule in specific detail at the pleading stage, but he must at the very least make a plausible claim that he is entitled to relief because of the Defendants' misconduct.  See Ambriz, No. 13-CV-03539-JST, 2013 WL 5947010, at *4 (summarizing cases); Ovieda v. Sodexo Operations, LLC, No. CV 12-1750-GHK SSX, 2012 WL 1627237, at *2 (C.D. Cal. May 7, 2012) (granting motion to dismiss rest period claim because "Plaintiff fails to allege that she even once worked a shift long enough to obligate Defendant to provide her with a rest period" and "the [complaint] never once alleges the length of any shift worked by Plaintiff to show that Defendants' various obligations under the Labor Code were triggered").  The Court therefore grants the motion to dismiss this claim on the ground that Haralson has not adequately alleged that he worked sufficient hours to have been entitled to a meal or rest break.

United States District Court
Northern District of California

14

United also argues that the mere fact that Haralson had to be "relieved" to take a break does not mean that he was not offered a break in compliance with California law.  ECF No. 20 at 23.  The Court finds it plausible that the Defendants' release policy resulted in late, interrupted, or missed meal and rest breaks.  Haralson generally alleges that the Defendants' release policy impeded him and other class members from taking breaks.  These allegations, if true, plausibly state a claim upon which relief can be granted.  See Ambriz, No. 13-CV-03539-JST, 2013 WL 5947010, at *4–5 (holding that the plaintiff had plausibly stated a rest break claim under California law where the plaintiff alleged that "Defendant did not provide him with a net rest period of ten minutes per four hour work period, that Defendant maintained a policy of not providing him and members of the Rest Break Subclass with net rest periods of at least ten minutes per four hour work period, and that Defendant failed to pay premium wages when the rest breaks were not provided").  As this Court has previously noted, the "Plaintiff is not required to allege the non-existence of something, such as rest periods, with any greater specificity than he has done here."  Id.

### 3.    Failure to Pay Hourly and Overtime Wages

Under California law, an employer must pay employees the minimum wage for all hours worked.  See Cal. Lab. Code § 1197; Cal. Code Regs. tit. 8, § 11090.  In addition, employers must pay overtime pay (one and one-half times the regular rate of pay) for any work in excess of eight hours in one workday and forty hours in any workweek.  See Cal. Lab. Code § 510.

Haralson alleges that Defendants automatically deducted one hour from his timecard every work day for a meal period, regardless of whether or not he was actually provided with a meal period.  ECF No. 1-2 ¶¶ 67-71.  As a result, he argues, he was not paid for all hours worked, including overtime hours.  Id.  Haralson further alleges that Defendants "directed, permitted, or otherwise encouraged" Plaintiff and putative class members to continue to perform work off-the-clock after a supervisor had already signed them out of their shift.  See id. ¶¶ 72-75.

United argues that Haralson's hourly and overtime wage claim fails because it is derivative of his meal break claim, which fails because of the pleading deficiency noted above.  ECF No. 20 at 26.  Although part of Haralson's hourly and overtime wage claim is rooted in his meal break

15

United States District Court
Northern District of California

1    claim, Haralson makes additional allegations regarding hourly and overtime wages that are

2    independent of his meal break claim—namely, his allegation that the Defendants directed him to

3    work off-the-clock after he was signed out of his shift.  This part of Haralson's hourly and

4    overtime wage claim is therefore unaffected by the deficiency in Haralson's meal break claim

5    noted above.

6         However, Haralson's hourly and overtime wage claim suffers from a different deficiency:

7    it does not meet the pleading requirements established by the Ninth Circuit in Landers v. Quality

8    Communications, Inc., 771 F.3d 638 (9th Cir. 2014).  ECF No. 20 at 25-26.  "[I]n order to survive

9    a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked

10   more than forty hours in a given workweek without being compensated for the overtime hours

11   worked during that workweek."  Landers v. Quality Commc'ns, Inc., 771 F.3d 638, 644–46 (9th

12   Cir. 2014) (holding that the plaintiff failed to plausibly state a claim because her complaint did not

13   provide "any detail regarding a given workweek when [the plaintiff] worked in excess of forty

14   hours and was not paid overtime for that given workweek and/or was not paid minimum wages"),

15   as amended (Jan. 26, 2015), cert. denied, 135 S. Ct. 1845 (2015).  For example, "[a] plaintiff may

16   establish a plausible claim by estimating the length of her average workweek during the applicable

17   period and the average rate at which she was paid, the amount of overtime wages she believes she

18   is owed, or any other facts that will permit the court to find plausibility."  Id.  This does not mean

19   that a plaintiff needs to allege the amount of overtime compensation with "mathematical

20   precision" or provide "detailed factual allegations regarding the number of overtime hours

21   worked."  Id.  "After all, most (if not all) of the detailed information concerning a plaintiff-

22   employee's compensation and schedule is in the control of the defendants."  Id.

23        As in Landers, Haralson's complaint fails to provide any factual information regarding

24   whether he worked more than forty hours in any given workweek such that he was entitled to

25   overtime wages.  Haralson cites almost exclusively to pre-Landers case law to try to evade its

26   requirements.  See ECF No. 21 at 19.  And the only post-Landers case that Haralson relies on—

27   Johnson v. Q.E.D. Envtl. Sys. Inc.—is distinguishable.  ECF No. 21 at 23.  The complaint in that

28   case included factual information about the plaintiff's work schedule, for example that he

1   "regularly worked from 6:45 am to 3:15 pm, Mondays through Fridays, and worked longer hours

2   'at least once every two weeks.'" <u>Johnson v. Q.E.D. Envtl. Sys. Inc.</u>, No. 16-CV-01454-WHO,

3   2016 WL 4658963, at *1 (N.D. Cal. Sept. 7, 2016).  The court concluded that this allegation

4   satisfied <u>Landers</u>' requirement that the plaintiff "provide 'sufficient detail about the length and

5   frequency of [their] unpaid work to support a reasonable inference that [they] worked more than

6   forty hours in a given week.'" <u>Id</u>. at *4 (quoting <u>Landers</u>, 771 F.3d at 645).

7          At the very least, Haralson must provide some information about his work schedule from

8   which this Court could reasonably infer that he was deprived of overtime wages in violation of

9   California law.  The Court therefore grants the Defendants' motion to dismiss in this regard.

10                 **4.      Derivative Inaccurate Wage Statement and Unfair Competition Claims**

11          Haralson does not dispute that his inaccurate wage statement and unfair competition claims

12   are entirely dependent on the success of his meal break, rest period, and hourly and overtime wage

13   claims.  ECF No. 21 at 20-21.  Haralson alleges that Defendants' wage statements were inaccurate

14   because they did not reflect time worked off-the-clock, meal and rest period premiums, hourly and

15   overtime wages, and hours worked during meal periods.  ECF No. 1-2 ¶¶ 78-88.  Haralson's unfair

16   competition claim similarly depends on the success of his wage and hour claims.  <u>See id</u>. ¶ 110.

17          Because Haralson failed to adequately plead the underlying wage and hour claims as

18   explained above, his derivative claims for inaccurate wage statements and unfair competition also

19   fail.  <u>See White v. Starbucks Corp.</u>, 497 F. Supp. 2d 1080, 1089-90 (N.D. Cal. 2007); <u>Ingels v.

20   Westwood One Broad. Servs., Inc.</u>, 129 Cal. App. 4th 1050, 1055, 1060 (2005) ("If the Unruh Act

21   claim is dismissed, then there is no 'unlawful' act upon which to base[] the derivative Unfair

22   Competition claim.") (internal quotation marks and citations omitted).

23                 **5.      Waiting Time Penalty Claim**

24          Waiting time penalties are only available to those employees who have been discharged or

25   who have quit.  <u>See</u> Cal. Lab. Code § 203; <u>Porch v. Masterfoods, USA, Inc.</u>, 685 F. Supp. 2d

26   1058, 1075 (C.D. Cal. 2008), <u>aff'd</u>, 364 F. App'x 365 (9th Cir. 2010) ("[W]aiting time penalties

27   are only available when an employee is discharged or quits a position.").  Haralson's complaint

28   does not allege that he resigned or was terminated.  To the contrary, he alleges that he continues to

United States District Court
Northern District of California

17

work for the Defendants.  ECF No. 1-2 ¶ 5.  Haralson's waiting time penalty claim therefore fails as a matter of law and is dismissed.  See Carceioly v. Khalaf, No. C11-04200 HRL, 2012 WL 832616, at *2 (N.D. Cal. Mar. 12, 2012) (dismissing waiting time penalty claim where plaintiff failed to allege that he was terminated or that he had resigned).

### 6.    Class Action Allegations

Finally, United argues that Haralson's class action allegations do not plausibly meet the Rule 23 standard.  ECF No. 20 at 28-31.  However, "compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim."  Gillibeau v. City of Richmond, 417 F.2d 426, 432 (9th Cir. 1969).  And it is premature to assess compliance with Rule 23 at this early stage where there defendant has yet to file an answer and discovery has not yet begun.  See Alexander v. Am. Exp. Co., No. 8:11-CV-00843, 2011 WL 6046928, at *2 (C.D. Cal. Nov. 10, 2011); In re Wal-Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609, 615–16 (N.D. Cal. 2007).  "[A] motion for class certification is a more appropriate vehicle."  Thorpe v. Abbott Labs., Inc., 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008).  The Court therefore denies the Defendants' motion to dismiss in this regard.

### CONCLUSION

The Court grants in part and denies in part Defendants' motion to dismiss with leave to amend any dismissed claims.  Any amended pleading must be filed within 21 days of this order. The amended complaint should cure the specific deficiencies noted in this Order.  Failure to file an amended pleading will result in dismissal with prejudice.

The Case Management Conference currently scheduled for December 21, 2016 is continued to February 22, 2017 at 2:00 p.m.  An updated Joint Case Management Statement is due by February 13, 2017 at 5:00 p.m.

IT IS SO ORDERED.

Dated:  December 12, 2016

_____
JON S. TIGAR
United States District Judge